

AlaFile E-Notice

50-CV-2024-900163.00
Judge: CHRISTOPHER F ABEL

To: RILEY ROBERT RENFROE JR.
rob@rileyjacksonlaw.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MARSHALL COUNTY, ALABAMA

MICHAEL MASHKEVICH V. OLIVIA AVA ET AL
50-CV-2024-900163.00

The following matter was FILED on 6/14/2024 9:39:30 AM

Notice Date:     6/14/2024 9:39:30 AM

ANGIE JOHNSON
CIRCUIT COURT CLERK
MARSHALL COUNTY, ALABAMA
424 BLOUNT AVE.
SUITE 201
GUNTERSVILLE, AL, 35976

256-571-7785
angie.johnson@alacourt.gov

ELECTRONICALLY FILED
6/14/2024 9:39 AM
50-CV-2024-900163.00
CIRCUIT COURT OF
MARSHALL COUNTY, ALABAMA
ANGIE JOHNSON, CLERK

IN THE CIRCUIT COURT OF MARSHALL COUNTY

| | |
|---|---|
| MICHAEL MASHKEVICH, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| V. | ) CASE NO.: CV-2024-900163 |
| OLIVIA AVA, EMMA MILLER, and F.B. LEE, | ) ) ) |
| Defendants. | ) ) |

## PRELIMINARY INJUNCTION ORDER

The Court has previously considered Plaintiff's Emergency Motion for Temporary Restraining Order and for Order to Show Cause Why a Preliminary Injunction Should Not Issue. On June 4, 2024, the Court issued an Order for Temporary Restraining Order and to Show Cause (the "TRO").

Now pending before the Court is whether to grant Plaintiff a preliminary injunction. This matter was scheduled for hearing on June 14, 2024. Based on the arguments of Plaintiff's counsel and the related Declaration of Albina Giuttari, the Court is satisfied that Plaintiff's counsel has met the service requirements set forth in the TRO. Consequently, Defendants and the entities enjoined by the TRO were provided with notice of this hearing, informed of the nature of this hearing, and informed of their right to be heard. At said hearing, no defendants appeared to be heard in person or through counsel.

The Court has reviewed and considered the evidence, which includes the Affidavit of Plaintiff Michael Mashkevich and the attached WhatsApp chats with Defendants F.B. Lee and Emma Miller, the Declaration of Charles Zach, and the Affidavit of Robert R. Riley, Jr. The Court has also heard and considered the arguments of counsel.

1

This case involves the alleged theft of cryptocurrency using a scheme known as "pig butchering." Using fake identities, fake websites, offshore bank accounts, and legitimate and illegitimate cryptocurrency exchanges, Defendants perpetrated a scheme to convert and fraudulently obtain large sums from Plaintiff and similarly situated individuals. After the victims have been lured to transfer large amounts of money – the "fattening" – the perpetrators and the victims' assets disappear – the "butchering." The scheme has many variations, but it always results – as it did in this case – with the proceeds of the scheme being transferred beyond reach through cryptocurrency channels.

The version of the scheme that ensnared Plaintiff involved Defendants promising Plaintiff he would be paid for performing standardized online work. Defendants represented that the work involved real and legitimate online tasks, including tasks related to software applications at real companies. The websites on which the work was performed are fake, though Plaintiff did not know that while he was performing the work and while the scheme was unfolding. Early on, Defendants requested that Plaintiff contribute a small amount of funds – converted to cryptocurrency – to set up the respective accounts that were supposedly part of the work that Plaintiff would be performing. Eventually, Defendants represented that Plaintiff was required to transfer additional funds to the accounts for standardized, boilerplate reasons, including when Plaintiff's credit score had dropped, Plaintiff's account balance had gone negative, Plaintiff owed taxes, or due to a problem with loans from other work platform members. After Defendants persuaded Plaintiff to deposit additional funds, they stole the money and transferred it to cryptocurrency wallets they control. Defendants then attempted to conceal their conversion of the Plaintiff's cryptocurrency through a series of online transactions designed to hide their trail. Charles Zach and his company were able to trace and connect Defendants' transactions, follow the trail, and identify several of the cryptocurrency wallets that held and/or hold the cryptocurrency funds of Plaintiff and others who were likely victims of similar "pig butchering" schemes.

The TRO froze the digital wallets which held and/or hold the cryptocurrency funds of Plaintiff and others who were likely victims of similar "pig butchering" schemes. Plaintiff now seeks a preliminary injunction that would serve to continue the freeze of those wallets.

"'In order for a trial court to grant a preliminary injunction, the plaintiff must show all of the following: 1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no

adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff.'" *Stephens v. Colley*, 160 So.3d 278, 282 (Ala. 2014) (internal citations omitted, emphasis in the original).

The Court is satisfied that without the injunction Plaintiff would suffer immediate and irreparable injury. Cryptocurrency theft schemes threaten imminent and irreparable loss absent injunctive relief due to the risk of anonymous and speedy asset dissipation. It would be a simple matter for Defendants to transfer cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the Court. Here, through substantial effort, the current location of the cryptocurrency has been established. But that location can change quickly because Defendants can quickly and easily move the cryptocurrency to other digital wallets, continuing to put those assets outside the reach of victims and this Court. The only way to prevent that irreparable harm is to freeze the digital wallets that currently hold the cryptocurrency, thereby preventing Defendants – until this Court decides otherwise – from transferring the cryptocurrency to parts unknown.

The Court is satisfied that Plaintiff has no adequate remedy at law. A money judgment is an inadequate legal remedy based both on the anonymity of the Defendants at the heart of the scheme, as well as the difficulty in having to trace transfer of cryptocurrency. Defendants can convert the cryptocurrency to a place where Plaintiff can no longer find it or find Defendants themselves. Defendants' identities are either unknown or fake and a money judgment against them is meaningless. Absent an injunction, Defendants can be expected to continue to transfer Plaintiff and others' cryptocurrency beyond the reach of discovery and this Court. Thus, the only remedy is to enjoin the transfer of the cryptocurrency at issue.

The Court is satisfied that Plaintiff has at least a reasonable chance of success on the ultimate merits of his case. Under Alabama law, "[c]onversion occurs upon a wrongful taking, an interference, or a detention of the property of another." *Yarbrough v. Williams*, 533 So.2d 565, 567 (Ala. 1988). "Generally, an action will not lie for the conversion of money. However, if the money at issue is capable of identification, then a claim of conversion may be appropriate." *Greene County Bd. of Educ. v. Bailey*, 586 So.2d 893, 898 (Ala. 1991). Here, Plaintiff has made a strong showing that Defendants converted his

cryptocurrency deposits and investments through a series of unauthorized and unlawful transfers. Defendants used fake work platforms to lure Plaintiff to transfer funds to cryptocurrency wallets controlled by Defendants. Defendants orchestrated all of this through fake websites and fake balances that purported to show the "commissions" that Plaintiff had earned. Plaintiff made ever increasing transfers because Defendants said the transfers were necessary to free-up the "commissions" Plaintiff was led to believe that he earned for online optimization work. In doing so, Defendants converted Plaintiff's property. Plaintiff's transfers were made with cryptocurrency, and that cryptocurrency is specific, identifiable property subject to conversion. By its very nature, cryptocurrency has a unique and specific identification within the blockchain. Indeed, it is this attribute from which cryptocurrency derives its value in being specific and identifiable.

Finally, the Court is satisfied that the hardship imposed on the Defendants by the injunction would not unreasonably outweigh the benefit accruing to the Plaintiff. Even if Defendants could claim a legal right to the stolen cryptocurrency, the freeze of such assets is but a temporary inconvenience. Counterbalanced against this inconvenience is the harm to Plaintiff and the other potential class members if an injunction does not issue. Namely, that Plaintiff and other potential victims' cryptocurrency will be forever gone and leave them with no adequate remedy for their loss. A delay in Defendants' ability to transfer the assets only minimally prejudices Defendants, whereas withholding injunctive relief would severely prejudice Plaintiff by providing Defendants time to transfer the allegedly purloined assets into other accounts beyond the reach of this Court. Consequently, the balancing of the harm to Plaintiff and the "pig butchering" Defendants favors injunctive relief.

Based on the foregoing, it is **ORDERED** that:

1. Plaintiff's request for a preliminary injunction is **GRANTED** pursuant to *Alabama Rule of Civil Procedure* 65(d).

2. Defendants Olivia Ava, Emma Miller, F.B. Lee, and non-parties Binance Holdings Ltd., OKX, Gate.io, KuCoin, LBank, and any of their agents, servants, employees, attorneys, partners, successors, assigns, subsidiaries, or any other persons through which they act, or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, (collectively,

4

the "Enjoined Parties") are hereby enjoined from withdrawing, transferring, selling, encumbering, or otherwise altering any of the cryptocurrency or assets held in the wallet addresses listed in Appendix A of this Order, whether such property is located inside or outside of the United States of America.

3. Plaintiff's attorneys shall cause a copy of this Order to be served upon the person or persons controlling the wallets identified in Appendix A to this Order via a special-purpose token or equivalent blockchain currency or code (the "Service Token"), delivered into the wallets identified in Appendix A to this Order. The Service Token will contain a hyperlink (the "Service Hyperlink") to the website Plaintiff's counsel has caused to be created, wherein Plaintiff's counsel shall cause to be published this Order. The Service Hyperlink will include a mechanism to track when a person clicks on the Service Hyperlink. Such service shall constitute actual notice of this Order and sufficient service on the person or persons controlling the corresponding wallet addresses identified in Appendix A of this Order.

4. Binance Holdings Ltd., OKX, Gate.io, KuCoin, LBank, and any of their agents, servants, employees, attorneys, partners, successors, assigns, subsidiaries, or any other persons through which they act, or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby directed, within twenty-four (24) hours of receiving actual notice of this Order to provide notice of the same to any of their customers associated with the wallet addresses identified in Appendix A of this Order, including Defendants, and provide counsel for Plaintiff copy of such notice.

5. Binance Holdings Ltd., OKX, Gate.io, KuCoin, LBank, and any of their agents, servants, employees, attorneys, partners, successors, assigns, subsidiaries, or any other persons through which they act, or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby directed, within ten (10) days of receiving actual notice of this Order, to provide Plaintiff's attorneys with the type and total amount of cryptocurrency and assets contained within each wallet address identified in Appendix A of this Order as of the date of this Order.

6.  Pursuant to *Ala. R. Civ. P.* 65(c), the Court in its discretion determines that no bond or security is required. *Ala. R. Civ. P.* 65(c) provides "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained[.]" There are exceptions to the security requirement, including when the issue addressed by the preliminary injunction "'is one of overriding public concern.'" *Spinks v. Automation Pers. Servs., Inc.*, 49 So.3d 186, 190 (Ala. 2010) (internal citations omitted). The overriding public concern is providing assurance to the public that courts will take action to promote protection of assets and recovery of stolen assets when they can be readily located and traced to specific locations. Freezing cryptocurrency accounts reassures the public that even with transactions conducted in the cryptocurrency space, there is an adequate remedy to prevent fraud or theft. Conversely, no public interest would be served by continuing to permit Defendants to transfer and dissipate stolen assets in furtherance of their scheme. Defendants have no right to this stolen property and, consequently, will sustain no damages if they are restrained from further transfer of these assets.

7.  Until such time as the Court issues an order that either terminates, modifies, or converts it into permanent injunction, the preliminary injunction set forth in this Order shall remain in full force and effect.

**ORDERED** this **14ᵀᴴ** day of **JUNE, 2024**.

_____
**CIRCUIT JUDGE**

Appendix A

**Binance Holdings**
THm7R5wHvqx8gZkCX9KS9hjhvUv5TrXU4y
TTTkoMc9VuVKTGFQJPxF5pS2f1XV5u5QHJ
TLB95AHgDtns5cohFKicTsE2zpFqcbzMM7
TBcUKtZxjcR6HmcVXV4TFcFWN3nvDDAqTw
TXMA8WaXdWa5EYkBhAMuCwjHjSdHGvyV2y
TCzHEWKCgo17CVwbkPFmZorDi9kWkpMbnd
TKJ77SjyQGAX4u711tneGXpgZLTVwRZ8Uk
TFsZ9UvNYS4tLPWLUzKsGviHsPsWFuKsH8
TPJV9ayW6YqPK9yddvaMzKwm424ySeJriK
TNRzzzCZ5x1HPS6LSca2MCamDLoJNQLTdW
TDuJLcreNwBzDp3RHrpsoTbhnw9s3QmPb9
TBJh9brKQp8ZvTq6vi5BvU9epdwEP63ysj
TWUeDMvPrY88cpX2EmFxHdd2xtWfm9cPDK
TLvFAMp7qZ7iF8fqqewM7AMjJtzZwjSWve
TGqjuFc8jxfjZBpUuFGnRLAXqzbHzYB4Wm
TLN6ayhvQqzFK1KweyNDfMiqMfgrZ2rMg3
TUjGaqLmBnYythnN5hPNELyJPBBmEcjXdW
TTv4AqmaKwMt2SagrSyRyqE7XB6dpLUHyd
THEJ47jWuKmwssvvo7hrmw1wyjFbxDR54p
TP9uatVfbAcZe4qAqANZ6Hjc7JrzGGYhro
TJphKU7t3aW1WoJ3ur9YW4zxNwE9cc6e2H

**OKX**
TSLj5S3KAfvK8mDtDBisZvWDGUbKUDR16v
TCeLkTvsCb6Tz2ik7xng1YoT9BYdcVxHnr
TJGebBJfUAgs4NUManaRFGQRpoLEwYPj2o
TLXtzgg2Axd7ThhhZRq5LoBLgsUYnx8TpZ
THGTenLmvqWycGLGtgRvX4wURiIIQeDvNps
TFwi8cW7CUZ3mVY92hYaQiEoAYr5z1E2Kh
TUxrJsf1ZcRgXpfX9L2VLUCEJ5DUs2mWC7
TKuKfiyMCV65AK4A5YGLP3sgDnzkMc6fdp
TA8C3BnEyVvyPGTTEhcsNZz9jNNm6j8tbi

**Gate.io**
TXV4pAhJSk9BxetRLh2BvTEnyC8xc7VZM8

**KuCoin**
TDGGk3yNwo9uEmL69zmdwJwUYaCozZMQuD
TUijurbvTKwCpYzEi3TnC62gRLGCxn7q6T

**LBank**
TUNN5XDrQg6fkfUEdWcYDHgvPwXyxS1k2C
TGUSM4zJ6XrJ5xaD9pnB5eLrKy2GqjG3pC
TVXe59tPrQmFVrP4no59t1Vp3aDSfs8m2t

7