Vijay J. Rajagopal, State Bar No. 290886
  vijay@kurichetylaw.com
**KURICHETY LAW PC**
179 McKnight Drive, Suite 6
Laguna Beach, California 92651
Tel:    217-390-2505

Michael Kozlowski (*pro hac vice*)
  Illinois State Bar No. 6320950
  michael.kozlowski@esbrook.com
**ESBROOK PC**
321 N. Clark Street Suite 1930
Chicago, Illinois 60654
Tel:    (312) 319-7682

Attorneys for Plaintiff
MICHAEL MASHKEVICH, on behalf of
himself and all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL MASHKEVICH, on behalf of himself and all others similarly situated, | Case Number: 5:25-cv-02565-PCP |
| Plaintiff(s), | **SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT TO *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER** |
| vs. | |
| UAB QBIT FINANCIAL SERVICE; BYTECHIP LLC d/b/a QBIT and QBITPAY; and YUJUN WU a/k/a MICHAEL WU, | |
| Defendant(s). | |

# TABLE OF AUTHORITIES

**Cases**

*3123 SMB LLC v. Horn*,
   880 F.3d 461 (9th Cir. 2018)..................................................................................5

*Adams v. W Marine Prods., Inc.*,
   958 F.3d 1216 (9th Cir. 2020)................................................................................3

*Astrove v. Doe*,
   No. 22-CV-80614-RAR, 2022 WL 2805315(S.D. Fla. Apr. 22, 2022) ..................9

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) .................................................................................1

*Bresgal v. Brock*,
   843 F.2d 1163 (9th Cir. 1987)..............................................................................11

*Carolina Cas. Ins. Co. v. Team Equip., Inc.*,
   741 F.3d 1082 (9th Cir. 2014)................................................................................6

*Central Ariz. Water Conservation Dist. v. United States EPA*,
   990 F.2d 1531 (9th Cir. 1993)................................................................................1

*Corber v. Xanodyne Pharm., Inc.*,
   771 F.3d 1218 (9th Cir. 2014)................................................................................3

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014).................................................................................................4

*Estakhrian v. Obenstine*, Case No. CV 11-3480 FMO (CWx),
   2017 WL 11296956 (C.D. Cal. Nov. 19, 2017)................................................. 2-3

*Estakhrian v. Obenstine*,
   320 F.R.D. 63 (C.D. Cal. 2017) .............................................................................1

*Estakhrian v. Obenstine*,
   320 F.R.D. 63 (C.D. Cal. 2017) .............................................................................1

ii
Supplemental Memorandum in Support of Ex Parte Motion for TRO  5:25-cv-02565-SVK

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ..................................................................................................6

*Heissenberg v. Doe*,
    No. 21-CIV-80716, 2021 WL 8154531 (S.D. Fla. Apr. 23, 2021)................................9

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2013) ....................................................................................................5

*Johnson v. Columbia Props. Anchorage, LP*
    437 F.3d 894 (9th Cir. 2006) .....................................................................................5

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ............................................................................. 1-2

*JUUL Labs, Inc. v. Chou*,
    No. CV 21-3056 DSF (PDX), 2021 WL 4900374 (C.D. Cal. June 9, 2021) .......... 9-10

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ...................................................................................1

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009) .......................................................................2

*Price v. City of Stockton*,
    390 F.3d 1105 (9th Cir. 2004) .................................................................................11

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ...................................................................................6

*Reebok Int'd Ltd. v. Marnatech Enterprises, Inc.*,
    737 F. Supp. 1521 (S.D. Cal. 1989) .........................................................................10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .....................................................................................8

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ..................................................................................................4

*Steen v. Am. Nat'l Ins. Co.*,
    No. 2:20-cv-11226-ODW (SKx), 2022 WL 19915548 (C.D. Cal. Feb. 9, 2022)..........3

iii
Supplemental Memorandum in Support of Ex Parte Motion for TRO  5:25-cv-02565-SVK

*T-Link, Inc. v. Jbarah*,
 No. 1:22-CV-03206-VMC, 2022 WL 4596673 (N.D. Ga. Aug. 16, 2022)..................10
*Transure, Inc. v. Marsh and McLennan, Inc.*,
 766 F.2d 1297 (9th Cir. 1987) .......................................................................................5

**Statutes and Rules**

28 U.S.C. § 1332.....................................................................................................................5

Fed. R. Civ. P. 65(d) .............................................................................................................10

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  PLAINTIFF HAS STANDING ..................................................................................... 1

   A.   Plaintiff Has Suffered an Injury in Fact ................................................................. 1

   B.   Plaintiff's Injury is Fairly Traceable to Defendants' Conduct ............................... 2

III. THE COURT HAS SUBJECT MATTER JURISDICTION ......................................... 3

   A.   This Court has Subject Matter Jurisdiction Pursuant to Class Action Fairness Act ........... 3

   B.   This Court has Diversity Subject Matter Jurisdiction ............................................ 5

IV.  THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT QBIT ........ 6

   A.   This Court has Personal Jurisdiction over Defendant Qbit ................................... 6

   B.   This Court has Specific Jurisdiction over Defendant Qbit .................................... 8

V.   THE COURT CAN ORDER RELIEF INVOLVING OKX EXCHANGE .................... 9

VI.  CONDITIONAL CLASS CERTIFICATION IS NOT REQUIRED ........................... 10

VI.  CONCLUSION ............................................................................................................ 12

## I. INTRODUCTION

Plaintiff filed this Supplemental Memorandum to address the concerns raised at the status hearing held on March 20, 2025. As explained in more detail below, Plaintiff has standing because he has suffered a concrete injury, fairly traceable to Defendants' conduct, that is redressable by the Court.

## II. PLAINTIFF HAS STANDING

"To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Additionally, in the context of a class action, "standing is satisfied if at least one named plaintiff meets the requirements." *Estakhrian v. Obenstine*, 320 F.R.D. 63, 77 (C.D. Cal. 2017) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)). Plaintiff satisfies all elements of standing.

### A. Plaintiff Has Suffered an Injury in Fact

Plaintiff has suffered a direct financial loss because of Defendants' unlawful conduct in the pig butchering scheme described in the Complaint. (Dkt. 1, ¶49-63.) This financial harm constitutes a concrete and particularized injury. Economic injury is clearly sufficient basis for standing. *Central Ariz. Water Conservation Dist. v. United States EPA,* 990 F.2d 1531, 1537 (9th Cir. 1993), *cert. denied,* 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993). Moreover, the threat of further dissipation exacerbates the harm suffered by Plaintiff. The risk of irreparable harm through asset dissipation is well-established as a form of injury. *See Johnson v. Couturier*, 572

F.3d 1067, 1085 (9th Cir. 2009). Defendants' unlawful scheme creates a credible risk that Plaintiff will be unable to recover his losses absent immediate relief.

### B. Plaintiff's Injury is Fairly Traceable to Defendants' Conduct

Plaintiff's injury is directly linked to Defendants' involvement in the pig butchering scheme alleged in detail in the Complaint. Defendants engaged in unlawful conduct by transferring and laundering Plaintiff's and the Class' funds that were unlawfully taken from them through the targeted deception alleged in the Complaint. Defendants now house millions of dollars of money stolen from the Class in the THGTen Destination Wallet. (Zazarinski Decl. (Dkt 9-3), ¶ 36.) In short, there is more than a sufficient nexus between the harm and these Defendants to satisfy the low bar imposed by Article III's standing requirements. *See Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 878 (N.D. Cal. 2009), *aff'd,* 696 F.3d 849 (9th Cir. 2012) ("traceability of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation.") As demonstrated in the Declaration of Adam Zarazinski, there is a direct link between the funds lost of the THGTen Destination Wallet. (*See e.g.,* Zazarinski Decl. (Dkt 9-3), ¶¶ 24-36.)

### C. Plaintiff's Injury is Likely to be Redressed by a Favorable Decision

A favorable ruling from this Court will provide Plaintiff with meaningful relief, including monetary recovery and the potential for asset preservation through TRO relief. Courts recognize that the risk of asset dissipation supports the issuance of injunctions to preserve assets pending judgment. *See Johnson*, 572 F.3d at 1085 ("Couturier's own prior conduct [of transferring $35mm from stock plan to himself] establishes a likelihood that in the absence of an asset freeze and accounting, Plaintiffs will not be able to recover the improperly diverted funds and will thus be irreparably harmed. "); *Estakhrian v. Obenstine*, 2017 WL 11296956, at *4 (C.D. Cal. Nov. 19,

2017) (evidence that defendant's net worth dropped from 2.5mm to 370K during 17-month period sufficed to show irreparable harm).

In sum, Plaintiff and the Class had their funds stolen through a fraudulent scheme in which these Defendants participated and their funds are currently sitting in the THGTen Destination Wallet. Thus, they have suffered a injury, fairly traceable to Defendants, that can be redressed by this Court. Plaintiff has standing.

### III.   THE COURT HAS SUBJECT MATTER JURISDICTION

**A. This Court has Subject Matter Jurisdiction Pursuant to Class Action Fairness Act**

This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which provides federal jurisdiction over class actions where the amount in controversy exceeds $5 million and minimal diversity exists. Plaintiff's allegations readily satisfy these requirements.

"CAFA provides, in relevant part, that federal district courts shall have original jurisdiction over civil class actions where the matter in controversy *exceeds five million dollars* and *any member of a class of plaintiffs is a citizen of a State different from any defendant*[.] Congress enacted CAFA in 2005 to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multistate or even national class actions in state courts." *Adams v. W Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020) (emphasis added; internal quotation marks omitted; quoting 28 U.S.C. § 1332(d)(2); *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1222 (9th Cir. 2014) (en banc)). Further, a plaintiff's complaint need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Steen v. Am. Nat'l Ins. Co.*, 2022 WL 19915548, at *1 (C.D. Cal. Feb. 9, 2022) (quoting

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Plaintiff easily meets this standard.

### 1. Plaintiff Satisfies the Amount in Controversy

Plaintiff alleges that the total damages sought on behalf of the proposed class are $28 million, far surpassing the $5 million threshold set forth by CAFA. (Dkt. 1, ¶92.) The complaint details the substantial financial harm caused by Defendant's cryptocurrency fraud scheme, which defrauded Plaintiff and other class members of millions of dollars. (*Id.*, ¶92.) For jurisdictional purposes, the amount in controversy is determined by aggregating the claims of all proposed class members. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) ("to determine whether the matter in controversy exceeds the sum or value of $5,000,000, the claims of the individual class members shall be aggregated."). Plaintiff's plausible allegations, including his own significant losses and the scope of the unlawful pig butchering scheme, support the finding that the amount in controversy exceeds $5 million. The fact that Plaintiff seeks a TRO related to only one of the Defendants' wallets seeking to secure only a portion of their damages does not reduce the amount in controversy, which remains will in excess of the $5 million threshold.

### 2. Plaintiff Satisfies Minimal Diversity

Plaintiff has also established minimal diversity required under CAFA. The minimal diversity requirement is satisfied when any class member is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2). Here, Plaintiff is a citizen of Alabama. (Dkt. 1, ¶30.) Defendant Qbit, for example, is a Lithuanian limited liability company. (*Id.*, ¶31.) Defendant Bytechip is a Delaware limited liability company. (*Id.*, ¶33.) Yujun Wu is listed as the sole manager or member of Bytechip in the company's latest Statement of Information filed in California, dated July 24, 2024. (*Id.*) Wu is either a citizen of People's Republic of China or California. (*Id.*, ¶34.) These

alleged facts establish minimal diversity required under CAFA. Even if Defendants' precise citizenship is disputed, CAFA's requirement is met if any member of the proposed class resides in a different state from Defendant. Given the multistate nature of the cryptocurrency scheme, it is plausible that the class includes members from various states, further ensuring minimal diversity.

### B. This Court has Diversity Subject Matter Jurisdiction

Diversity jurisdiction exists where there is complete diversity and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1)–(2). A corporation is "a citizen of every State ... by which it has been incorporated and of the State ... where it has its principal place of business.' […] the Supreme Court has defined "principal place of business" to mean 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.'" *3123 SMB LLC v. Horn*, 880 F.3d 461, 462–63 (9th Cir. 2018) (quoting 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)). "For purposes of diversity jurisdiction, a limited liability company 'is a citizen of every state of which its owners/members are citizens.'" *3123 SMB LLC*, 880 F.3d at 465 (quoting *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)). Finally, subject matter jurisdiction is not defeated by the presence of a foreign corporation. *See Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1298 (9th Cir. 1987) ("Further, '[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy ... is between ... *citizens of different states and in which citizens or subjects of a foreign state are additional parties*....'. The presence of an alien corporation on one side as an additional party does not defeat diversity jurisdiction, for the statute contemplates it.") (quoting 28 U.S.C. § 1332(a)(3) (emphasis added)).

Plaintiff has established both prongs of diversity jurisdiction on an individual basis. The amount in controversy is greater than $75,000 as Plaintiff lost $90,000. (Dkt. 1, ¶ 92.) Second,

there is complete diversity. Plaintiff is a citizen of Alabama. (*Id*., ¶30.) Defendant Wu is a citizen of either California or China, as is Defendnat Bytechip LLC given that Wu is its sole member. (*Id*., ¶¶ 33-34.) Defendant Qbit is a Lithuanian entity with offices in Hangzhou and Shenzhen and in the special administrative region of Hong Kong and, according to its own website, an office in San Jose California. Qbit claims that its headquarters is in Lithuania. Qbit is a citizen of China, Lithuania, and/or California. Importantly, Qbit is not a citizen of Alabama. Indeed, it filed a motion to dissolve the Alabama injunction claiming that the Alabama Court lacked personal jurisdiction over it. Accordingly, there is complete diversity between Plaintiff and Defendants and, in any event, Plaintiff has met the incredibly low bar necessary to allege personal jurisdction. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014) ("at this early stage in the proceedings, a party should not be required to plead jurisdiction affirmatively based on actual knowledge").

For the foregoing reasons, Plaintiff has established subject matter jurisdiction both under CAFA as well as individual diversity.

IV.   **THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT QBIT**

   A. **This Court has Personal Jurisdiction over Defendant Qbit**

A court has general personal jurisdiction over a foreign corporation to hear any and all claims against the foreign corporation when its affiliations with a State are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Satisfying the alter ego test can support general personal jurisdiction. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) ("In contrast to the agency test, the Court left intact this circuit's alter ego test for 'imputed' general jurisdiction… The alter ego test is designed to determine whether the parent and subsidiary are

'not really separate entities,' such that one entity's contacts with the forum state can be fairly attributed to the other.").

In this case, Defendant Bytechip is an alter ego of Defendant Qbit. Qbit formerly operated as Bytechip. (Dkt. 1, ¶104.) Defendant Bytechip did business as Qbit, was owned by Qbit's executive officer, Yujun Wu, and had an office at the same address as Qbit: 2381 Zanker Rd, Ste 110, San Jose CA 95131. (*Id*.) Defendant Bytechip's operation under the name Qbit is identified in two different federal court cases. (*Id*.) In *Bytechip, LLC d/b/a Qbit v. Solid Financial Technologies, Inc. et al*, Bytechip identifies itself in the caption as "Bytechip, LLC **d/b/a Qbit**." (Dkt. 1-15) (emphasis added). Bytechip has also established a bank account as "Bytechip dba QbitPay." (Dkts. 1-7 and 1-16.)

Both Qbit and Bytechip are owned and operated by the same person, Yujun Wu, who conducted Bytechip related business using his Qbit email address, including the email signature as "Qbit CEO." (Dkt. 1-15 at p. 39) (email requesting release of "fund in Bytechip"). Defendant Wu is also listed as the CEO and the only member or manager in Bytechip's 2024 California Statement of Information. (Dkt. 1, ¶105.) Moreover, Bytechip "dba QbitPay" listed Defendant Wu as the beneficial owner of a bank account opened in its name. Qbit and Bytechip have also had offices registered at the same California address. (Dkt. 1, ¶106.) Finally, there is evidence of Qbit and Bytechip's common digital infrastructure, suggesting closely tied ownership. For example, the computer infrastructure at IP address 13.114.27.194 has domain name resolutions to bytechip.co and qbitnetwork.com. (Dkt. 1, ¶106.)

For these reasons, Plaintiff has sufficiently demonstrated that Defendant Bytechip is an alter ego of Defendant Qbit and this Court, therefore, may exercise personal jurisdiction over Defendant Qbit.

### B. This Court has Specific Jurisdiction over Defendant Qbit

The Ninth Circuit has established a three-part test for determining specific jurisdiction: (1) the defendant must purposefully avail himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If it does so, then the burden shifts to the party contesting jurisdiction to "present a compelling case" that the third prong of reasonableness has not been satisfied. *Id*.

"The first element of the test for specific jurisdiction may be satisfied by either purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts. Courts generally apply the purposeful availment analysis in connection with contract claims and the purposeful direction analysis in tort actions…Evidence of direction generally consists of action taking place outside the forum that is directed at the forum." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 692 (C.D. Cal. 2022), opinion clarified sub nom. *In re ZF-TRW Airbag Control Units Prods.*, No. LAML1902905JAKFFMX, 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022). In this case, Defendant Qbit purposefully availed itself of the privilege of conducting activities in California. Qbit maintains an office in California at Zanker Rd. Ste 110, San Jose, CA 95131. (Dkt. 1, ¶17.) Further, Qbit, through Bytechip, "operated in California and facilitated fraudulent cryptocurrency transactions." (*Id.*, ¶22.) "Qbit's fraudulent business activities were intentionally directed at U.S. financial institutions and victims, including those in California, creating a substantial connection

between Qbit and" California. (*Id*., ¶ 23.) Qbit, therefore, purposefully availed itself of the privilege of conducting activities in California. Next, Plaintiff also satisfies the second prong of the test as Plaintiff's claim arises out of Qbit's activities in California. As stated in the complaint, Defendants, including Qbit, "designed, contrived and effectuated the scheme set out herein from the State of California." (*Id*., ¶ 25.) Therefore, exercise of personal jurisdiction over Defendant Qbit is reasonable since the pig butchering scheme was orchestrated in California.

V.  **THE COURT CAN ORDER RELIEF INVOLVING OKX EXCHANGE**

This Court has authority to issue injunctive relief directed towards not only Defendants but also OKX cryptocurrency exchange where the THGTen Destination Wallet is located. Courts in other jurisdictions regularly grant similar relief in similar circumstances. *See Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805315 at *3 (S.D. Fla. Apr. 22, 2022) (granting *ex parte* temporary restraining order in a cryptocurrency scheme and ordering "Defendant John Doe and his agents, servants, employees, attorneys, partners, successors, assigns, *and all other persons or entities through which he/they act* or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise.. are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant… including but not limited to those assets currently held in…(2) any account at any other financial institution, bank, trading exchange, or investment firm") (emphasis added); *Heissenberg v. Doe*, No. 21-CIV-80716, 2021 WL 8154531, at *3 (S.D. Fla. Apr. 23, 2021) (ordering the same as *Astrove*, *supra*).

"The Court's authority is not limited to freezing specific identified assets, nor to freezing assets within this district or the United States. It can extend to banks and other non-parties that have custody of Defendants' assets or provide payment services to Defendants." *JUUL Labs, Inc*.

*v. Chou*, No. CV 21-3056 DSF (PDX), 2021 WL 4900374, at *12 (C.D. Cal. June 9, 2021) (granting preliminary injunction and holding that " [i]mmediately on receipt of this Order, any bank, brokerage house, financial institution, credit card association… holding any assets by, for, or on account of… any of the [Defendants and their agents]… shall locate all accounts and funds… and be restrained from releasing such funds until further order of this Court."); *see also T-Link, Inc. v. Jbarah*, No. 1:22-CV-03206-VMC, 2022 WL 4596673, at *5 (N.D. Ga. Aug. 16, 2022) (in an action by Plaintiff for fraud, money had and received, civil conspiracy and unjust enrichment against Defendants who altered payroll records, the court granted *ex parte* TRO and ordered that third parties such as banks and credit card companies be enjoined from "transferring, disposing of, or secreting any money and any other assets" belonging to Defendants); *Reebok Int'd Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527–28 (S.D. Cal. 1989), *aff'd,* 970 F.2d 552 (9th Cir. 1992) (TRO and preliminary injunction order stating that "any banks, savings and loan associations, or other financial institutions ... who receive actual notice of this order by personal service or otherwise, are preliminarily enjoined from transferring, disposing of, or secreting any money, stocks or other assets of these defendants, until further order of the court" except in limited circumstances). Accordingly, the Court has the power to direct injunctive relief towards non-party cryptocurrency exchanges that hold Defendants' wallets, including the OKX exchange where the THGTen Destination Wallet is held.

## VI.   CONDITIONAL CLASS CERTIFICATION IS NOT REQUIRED

Under Rule 65(d) of the Federal Rules of Civil Procedure, an injunction is binding upon "the parties to the action, their officers, agents, servants, employees, and attorneys." Fed. R. Civ. P. 65(d). While Rule 65(d) explicitly defines the scope of those bound by an injunction, it is silent as to whether an injunction may provide incidental benefits to non-parties. Courts within the Ninth

Circuit have recognized that injunctive relief may extend protection beyond the named parties when necessary to provide complete relief. For this reason, provisional certification is not *required* at this juncture.

In *Bresgal v. Brock*, the Ninth Circuit held that "an injunction is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled." *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987). Similarly, in *Price v. City of Stockton*, the court upheld a preliminary injunction that benefitted displaced tenants beyond the named plaintiffs, finding that the injunction was appropriately tailored to prevent further harm. *Price v. City of Stockton*, 390 F.3d 1105, 1117-18 (9th Cir. 2004).

Here, Plaintiff seeks an injunction to freeze a cryptocurrency wallet identified through tracing by Plaintiff's expert. While the wallet contains funds potentially belonging to other class members, freezing the wallet is essential to ensure Plaintiff can recover the funds to which he is entitled, which include punitive damages for the intentionally unlawful pig butchering scheme. The fact that non-parties may incidentally benefit from the injunction does not render it impermissible. Rather, such relief is consistent with the principles articulated in *Bresgal* and *Price*, which recognize the court's equitable authority to fashion effective relief. Moreover, without the requested injunction, and in the event the Alabama court dissolves its injunction, Plaintiff's ability to recover his funds may be irreparably harmed. Cryptocurrency transactions are inherently rapid and difficult to reverse. Permitting continued transfers from the THGTen Destination Wallet would create a substantial risk of dissipation, undermining the effectiveness of any final judgment in Plaintiff's favor. Freezing it now ensures the court's jurisdiction is preserved and Plaintiff's rights are protected.

Furthermore, freezing only a partial amount of the THGTen Destination Wallet poses a significant risk that all funds will be quickly dissipated. Cryptocurrency schemes are inherently difficult to trace, and once funds are transferred, they can be moved across multiple wallets or converted to other assets, making recovery nearly impossible. In this case, partial relief, would provide bad actors with opportunity to evade accountability by concealing or liquidating their remaining assets. A complete freeze is necessary to prevent irreparable harm and ensure the Court's ability to grant effective relief.

The proposed injunction is narrowly tailored to address the specific harm Plaintiff has suffered. The proposed injunction only targets the THGTen Destination Wallet. Plaintiff does not seek to adjudicate the rights of other wallet holders at this stage but merely to preserve the status quo. For this reason, provisional certification of class is not required at this stage. In balancing the equities, the harm to Plaintiff if the wallet is not frozen far outweighs any potential inconvenience to other parties and non-parties.

In short, while provision class certification is not strictly required, Plaintiff easily satisfies the provision certification requirements as set forth in Plaintiff's Motion for Provision Class Certification, contemporaneously filed herewith and incorporated herein.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the *Ex Parte* Motion for Temporary Restraining Order and the enter the proposed temporary restraining order and order to show cause previously submitted with Plaintiff's *ex parte* motion and grant all other just and appropriate relief.

DATED: March 21, 2025        **ESBROOK PC**

By:  /s/ Michael Kozlowski
     Michael Kozlowski (*pro hac vice*)

     Attorneys for Plaintiff
     MICHAEL MASHKEVICH